MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: PIERRE G. ARMAND
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No.: (212) 637-2724
Fax No.: (212) 637-2730
Email: pierre.armand@usdoj.gov



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

UNITED STATES OF AMERICA,     :

                     Plaintiff,    :      No. 08 Civ. 5902 (SCR)

                            :      **NOTICE OF LODGING OF**

         v.              :      **PROPOSED CONSENT DECREE**

                            :

THE TOWN OF NEWBURGH, NEW    :
YORK,

                   Defendant.    :

                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

       The United States of America is hereby lodging with the Court the proposed

Consent Decree ("Consent Decree") attached hereto as Exhibit A.

       The United States requests that the Court not enter the Consent Decree at this

time. Rather, pursuant to 28 C.F.R. § 50.7, notice of the lodging of the Consent Decree will be

published in the Federal Register, following which the United States Department of Justice will

receive public comments on the Consent Decree for a 30-day period. After the conclusion of the

comment period, the United States will file with the Court any comments received, as well as

responses to the comments, and at that time, if appropriate, will request the Court to approve and

enter the Consent Decree.

Dated: New York, New York
      June 30, 2008

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

By:      _____

PIERRE G. ARMAND
Assistant U.S. Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel. No.: (212) 637-2724
Fax No.:  (212) 637-2730

To:    <u>By Federal Express</u>
Kimberlea Shaw Rea, Esq.
Bosworth Gray & Fuller
116 Kraft Avenue
Bronxville, New York  10708
*Counsel for Defendant*

Mark C. Taylor, Esq.
Rider, Weiner & Frankel, P.C.
655 Little Britain Road
New Windsor, New York  12550
*Counsel for Defendant*

<u>CERTIFICATE OF SERVICE</u>

I, PIERRE G. ARMAND, an Assistant United States Attorney for the Southern District of New York, hereby certify that on June 30, 2008, I caused a copy of the foregoing Notice of Lodging of Proposed Consent Decree to be served upon the following counsel of record for defendants by Federal Express:

Kimberlea Shaw Rea, Esq.
Bosworth Gray & Fuller
116 Kraft Avenue
Bronxville, New York  10708

Mark C. Taylor, Esq.
Rider, Weiner & Frankel, P.C.
655 Little Britain Road
New Windsor, New York 12550

Dated:      New York, New York
            June 30, 2008

_____
PIERRE G. ARMAND

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                      :
                                               :
                    Plaintiff,                 :        08 Civ. 5902 (SCR)
                                               :
              v.                               :
                                               :
THE TOWN OF NEWBURGH, NEW YORK,                :
                                               :
                    Defendant.                 :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **CONSENT DECREE**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York  10007
Tel. No.:  (212) 637-2724
Fax No.:  (212) 637-2730
E-mail: pierre.armand@usdoj.gov

PIERRE G. ARMAND
Assistant United States Attorney
– Of Counsel –

## **TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     APPLICABILITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    OBJECTIVES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      CIVIL PENALTY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.     COMPLIANCE REQUIREMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.    SUPPLEMENTAL ENVIRONMENTAL PROJECTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII.   MEETINGS AND REVIEWS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IX.     REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

X.      STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XI.     FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XII.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XIII.   INFORMATION COLLECTION AND RETENTION  . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XIV.    EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS  . . . . . . . . . . . . . . . 30

XV.     COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XVI.    NOTICES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XVII.   EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XVIII.  RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XIX.    MODIFICATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XX.     TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XXI.    PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XXII.   SIGNATORIES AND SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XXIII. INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

XXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

XXV.  APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By:  PIERRE G. ARMAND
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Tel. No.:  (212) 637-2724
Fax No.:  (212) 637-2730
Email:  pierre.armand@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | 08 Civ. 5902 (SCR) |
| | : | |
| v. | : | <u>CONSENT DECREE</u> |
| | : | |
| THE TOWN OF NEWBURGH, NEW YORK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, plaintiff, the United States of America ("United States"), on behalf of the

United States Environmental Protection Agency ("EPA"), has filed a Complaint against Defendant

the Town of Newburgh, New York ("Defendant" or the "Town"), alleging that the Town has violated

and continues to violate the Safe Drinking Water Act ("SDWA"), 42 U.S.C.

§300f, <u>et seq.</u>, the National Primary Drinking Water Regulations ("NPDWR") promulgated by EPA

pursuant to Section 1412 of the SDWA, 42 U.S.C. §300g-1, including the Surface Water

Treatment Rule ("SWTR"), 40 C.F.R. §§141.70-141.75, and the Stage 1 Disinfectants and

Disinfection Byproducts Rule ("Stage 1 DBPR"), 40 C.F.R. §§141.130-141.135;

WHEREAS, Defendant is the owner and operator of the Newburgh Consolidated Water

District, a public water system that provides drinking water to approximately 22,800 customers

through at least 15 service connections;

WHEREAS, the Newburgh Consolidated Water District provides drinking water that it obtains from a surface water source, namely the Delaware Aqueduct Source;

WHEREAS, the Complaint alleges, inter alia, that: (i) during 2005, 2006 and 2007, Defendant's drinking water frequently violated the maximum contaminant level ("MCL") for haloacetic acids ("HAA5"); (ii) Defendant failed to install filtration treatment for the drinking water within 18 months of the first HAA5 MCL violation; (iii) Defendant failed to provide the requisite notices of violation to the public; (iv) Defendant repeatedly failed timely to report monitoring data for the drinking water during 2005 and 2006; and (v) Defendant's conduct violated an Administrative Order issued by EPA against Defendant on December 11, 2002;

WHEREAS, the Parties intend by this Consent Decree to ensure that Defendant, as owner and operator of the Newburgh Consolidated Water District, will fully comply with the SDWA, the NPDWR, and the SWTR, the Stage 1 DBPR, and the Interim Enhanced Surface Water Treatment Rule (the "IESWTR"), 40 C.F.R. §§ 141.170-175; and

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action and over the

Parties to this Consent Decree pursuant to Section 1414(b) of the SDWA, 42 U.S.C. § 300g-3(b),

and 28 U.S.C. §§ 1331, 1345 and 1355.  Venue in this Court is proper pursuant to 28 U.S.C.

§§ 1391(b) and 1395 because Defendant resides and is located in this judicial district.

2.      For purposes of this Consent Decree, or any action to enforce this Consent

Decree, Defendant consents to venue in this judicial district and the Court's jurisdiction over this

Consent Decree, any such action, and over Defendant.  For purposes of this Consent Decree,

Defendant further agrees that the Complaint states claims against Defendant upon which relief

may be granted.

## II.  APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United

States and Defendant, and any successors, assigns, or other entities or persons otherwise bound

by law.

4.      No transfer of ownership or operation of the Newburgh Consolidated Water

District or the Water Treatment Plant ("WTP") described in Section IV of this Consent Decree

(Definitions) whether in compliance with the procedures of this Paragraph or otherwise, shall

relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At

least 30 days prior to any such transfer, Defendant shall provide a copy of this Consent Decree to

the proposed transferee and shall simultaneously provide written notice of the prospective

transfer, together with a copy of the proposed written agreement, to EPA Region 2, the United

States Attorney for the Southern District of New York, and the United States Department of

Justice, in accordance with Section XVI of this Consent Decree (Notices).  Any attempt to

transfer ownership or operation of the WTP without complying with this Paragraph constitutes a violation of this Consent Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Each contract with any contractor retained to perform work required under this Consent Decree shall provide that the work shall be performed in accordance with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III.  <u>OBJECTIVES</u>

7.      It is the express purpose of the Parties in entering into this Consent Decree to further the objectives of the SDWA, the NPDWR, the SWTR, the Stage 1 DBPR, and the IESWTR.  The objective of all plans, studies, construction, and other obligations undertaken by Defendant pursuant to Section VI is to cause Defendant to be in full compliance with the SDWA, the NPDWR, the SWTR, the Stage 1 DBPR, the IESWTR, and all other applicable federal and state laws and regulations governing public water systems.

8.      In order to expedite Defendant's performance of the Interim Measures described at Section VI.B and the Additional Measures described at Section VI.C, Defendant agrees to commence performance of the activities described in those Sections upon Defendant's execution of this Consent Decree and prior to entry of the Consent Decree by the Court.

IV.  <u>DEFINITIONS</u>

9.      Unless otherwise defined herein, terms used in this Consent Decree shall have the meanings provided in the SDWA and the NPDWR.  The following definitions shall apply for the purpose of this Consent Decree:

a.      "Complaint" shall mean the complaint filed by the United States in this action.

b.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto.

c.      "Effective Date" shall have the definition provided in Section XVII.

d.      "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

e.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

f.      "Defendant" shall mean the Town of Newburgh, New York, and any successors or assigns.

g.      "Delaware Aqueduct Source" shall mean water obtained from Shaft 5A of the Delaware Aqueduct System in New York.

h.      "Documents" shall be defined in accordance with Local Civil Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

i.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.      "IESWTR" shall mean the Interim Enhanced Surface Water Treatment Rule, 40 C.F.R. §§ 141.170-175.

k.      "Newburgh Consolidated Water District" shall mean the public water system owned and operated by Defendant.

l.      "NYSDOH" shall mean the New York State Department of Health.

m.      "OCDOH" shall mean the Orange County Department of Health.

n.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

o.      "Parties" shall mean the United States and Defendant.

p.      "Pilot Testing" shall mean the testing of a small-scale filtration plant, designed to simulate the proposed full-scale filtration system and evaluate the treatment process prior to final design and construction.

q.      "Preliminary Design" shall mean documents, including drawings, developed by Defendant, which serve as the basis for plans and specifications for the final design and construction contract documents for the WTP.  The Preliminary Design shall identify the proposed WTP design capacity, storage capacity, treatment process flow diagram, and detailed process design criteria.  The Preliminary Design shall also include drawings and criteria that define the general and spatial allowances for architectural, structural, mechanical, heating, ventilating, air conditioning, plumbing, electrical and other appurtenances.  The Preliminary Design shall further include a proposed construction plan setting forth, at a minimum, the

number and scope of phases of construction contracts and their interrelationships, as well as a proposed construction schedule.

r.    "SDWA" shall mean the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-26.

s.    "Section" shall mean a portion of this Decree identified by a Roman numeral.

t.    "SEQR" shall mean the New York State Environmental Quality Review Act, 6 N.Y.C.R.R. §§ 617.1, et seq.

u.    "Site Preparation" shall mean the first construction contract(s) or phase as described in the Preliminary Design for the WTP.  Site Preparation shall, unless not needed for the WTP project, include provision of temporary construction management facilities (such as trailers, offices, fencing and site security); construction of temporary service and access roads; site clearing and grubbing; demolition and removal of existing structures; rough grading; and provision of temporary electrical and other utilities.

v.    "SSC" shall mean the New York State Sanitary Code, 10 N.Y.C.R.R., Part 5, Subpart 5.1.

w.    "Stage 1 DBPR" shall mean the Stage 1 Disinfectants and Disinfection Byproducts Rule, 40 C.F.R. §§ 141.130-141.135.

x.    "Stage 2 DBPR" shall mean the Stage 2 Disinfectants and Disinfection Byproducts Rule, 40 C.F.R. §§ 141.600-605 and 141.620-629.

y.    "SWTR" shall mean the Surface Water Treatment Rule, 40 C.F.R. §§ 141.70-141.75.

z.      "Water Treatment Plant" or "WTP" shall mean all filtration, disinfection and other facilities necessary for Defendant to be capable of providing filtered and disinfected water from the Newburgh Consolidated Water District in compliance with 40 C.F.R., Part 141, Subparts H, L and P, and applicable New York law, including the New York State Sanitary Code, 10 N.Y.C.R.R., Part 5.

## V.  CIVIL PENALTY

10.     Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay the sum of one hundred thousand dollars ($100,000.00) as a civil penalty, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of New York.  At the time of payment, Defendant shall send a copy of the EFT authorization form and EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States of America v. Town of Newburgh, and shall reference the civil action number and the U.S. Attorney's Office case number (2006V01331) to the United States in accordance with Section XVI of this Consent Decree (Notices).

11.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section X (Stipulated Penalties) in calculating its federal income tax.

## VI.  COMPLIANCE REQUIREMENTS

A.    Long Term Measures

12.    Defendant shall construct and operate a WTP to provide for filtration and disinfection of all water in Defendant's drinking water distribution system supplied by the Delaware Aqueduct Source or other surface water source.  Defendant shall construct and operate the WTP in accordance with 40 C.F.R., Part 141, Subparts H, L and P, and all other applicable federal or state law, and in accordance with the following milestone events:

a.    By June 1, 2008, complete Pilot Testing.

b.    By November 1, 2008, submit a report setting forth the results of the Pilot Testing to the United States, NYSDOH, and OCDOH.

c.    By January 1, 2009, complete the environmental assessment form required SEQR and the scope of work, and notify the public of the availability of the environmental assessment form.

d.    By March 1, 2009, conduct all scoping sessions and/or hearings for all sites under consideration by Defendant as a location for the WTP.

e.    By January 1, 2009, submit to the United States, NYSDOH, and OCDOH conceptual designs for the WTP at all sites under consideration by Defendant.

f.    By March 1, 2009, commence the Preliminary Design of the WTP.

g.    By April 1, 2009, identify and submit to the United States, NYSDOH, and OCDOH, using due diligence, a list of all necessary local, State, and federal permits, approvals, and land acquisition needs for construction of the WTP at all sites under consideration by Defendant.  In the event that other permits, approvals, or land acquisition needs are identified at

a later date, Defendant shall have the duty to supplement its notification to the United States, NYSDOH, and OCDOH within thirty days of receipt of such information by Defendant.

   h.  By November 1, 2009, complete and submit to the United States, NYSDOH, and OCDOH any draft environmental impact statement ("EIS") required under SEQR, together with a description of changes, if any, to the conceptual design of the WTP, and commence any final EIS procedure required under SEQR.

   i.  By December 1, 2009, issue public notice of hearing on any Draft EIS required under SEQR.

   j.  By March 1, 2010, complete and submit to the United States, NYSDOH, and OCDOH any Final EIS required under SEQR.

   k.  By May 1, 2010, complete and submit Preliminary Design for the WTP to the United States, NYSDOH, and OCDOH.

   l.  By June 1, 2010, commence the final design of the WTP.

   m.  By July 1, 2010, confirm Defendant owns land or has acquired any land necessary for the completion of the WTP.

   n.  By October 1, 2010, complete and submit to the approval authorities all applications for all necessary local, state, and federal approvals and permits necessary for the WTP, other than those which, in accordance with Defendant's contracts, will be obtained during the course of WTP construction by the contractors, and submit all information necessary to process the applications therewith or promptly thereafter.

   o.  By October 1, 2010, complete and submit to the United States, NYSDOH, and OCDOH the final design, including contract documents with bid specifications, for Site Preparation.

p.      By October 1, 2010, complete and submit to NYSDOH all applications for NYSDOH approval for Site Preparation and submit all information necessary to process the applications therewith.

q.      By December 1, 2010, secure all necessary local, state, and federal final approvals and permits for the WTP, other than those which, in accordance with Defendant's contracts, will be obtained during the course of WTP construction by the contractors.

r.      By February 1, 2011, advertise for bids for Site Preparation for the WTP.

s.      By May 1, 2011, issue notice to proceed for Site Preparation.

t.      By November 1, 2011, complete all excavation for construction of the WTP.

u.      By May 1, 2012, complete placement of fifty (50) percent of all structural concrete with respect to the WTP.

v.      By September 1, 2012, complete placement of all process tankage concrete and enclosure of the WTP building.

w.      By January 1, 2013, complete installation of all filtration equipment.

x.      By May 1, 2013, complete construction of all WTP facilities necessary for startup of the WTP and commence startup testing of the WTP.

y.      By June 1, 2013, submit a standard monitoring plan in accordance with 40 C.F.R. §141.601, or a system specific study plan in accordance with 40 C.F.R. §141.602 to the United States, NYSDOH, and OCDOH.

z.      By July 1, 2013, commence operation of the WTP in compliance with the filtration requirements set forth at 40 C.F.R. Part 141, Subparts H, L, and P, all NPDWR, and all applicable SSC provisions, and continue to comply with all such provisions hereafter.

aa.    By December 31, 2014, complete standard monitoring or system specific study.

bb.    By April 1, 2015, submit an Initial Distribution System Evaluation ("IDSE") report pursuant to 40 C.F.R. Part 141, Subpart U, to the United States, NYSDOH, and OCDOH.

cc.    By October 1, 2015, begin complying with 40 C.F.R. Part 141, Subpart V, Stage 2 Disinfection Byproducts Requirements.

B.    Interim Measures

13.    At all times after the Effective Date until Defendant has complied with all the requirements set forth in Section VI.A, Defendant shall implement the following Interim Measures:

a.    SWTR Monitoring.    Defendant shall conduct monitoring in the Delaware Aqueduct Source of the Newburgh Consolidated Water System as specified in 40 C.F.R. §§ 141.74(b)(1), (2), (3), (4), (5), and (6).  On the tenth day of each month after the Effective Date, Defendant shall report to EPA, NYSDOH, and OCDOH the results of such monitoring.  Such reporting shall be in accordance with 40 C.F.R. § 141.75(a) and applicable SSC provisions.

b.    Additional Interim Conditions.    Defendant shall continue to meet the conditions outlined in the August 12, 1998, letter from Michael E. Burke of NYSDOH to James Osbourne, Town of Newburgh Engineer, including the condition that Defendant must provide filtered water from the Chadwick Lake source to meet the needs of its consumers and contract obligations at all times that the Delaware Aqueduct Source does not meet the conditions contained in the letter.  A copy of the August 12, 1998, letter is attached hereto as Appendix A and incorporated into this Consent Decree by reference.  In the event that consumer needs and

contract obligations (i.e., during periods of peak demand) exceed the capacity of the Chadwick

Lake filter plant, then Defendant may use the Delaware Aqueduct Source to the extent needed to

satisfy peak demand which is in excess of the capacity of the Chadwick Lake filter plant.

C.    Additional Measures

14.    At all times after the Effective Date, Defendant shall implement the following

Additional Measures:

a.    Stage 1 DBPR Monitoring and Reporting.  Defendant shall continue to

conduct Stage 1 DBPR monitoring of the Newburgh Consolidated Water District as specified in

40 C.F.R. § 141.132.  On the tenth day after the end of each calendar quarter after the Effective

Date, Defendant shall report to EPA, NYSDOH, and OCDOH the results of such monitoring.

Such reporting shall be in accordance with 40 C.F.R. § 141.134 and applicable New York law.

b.    Coliform Monitoring and Reporting.  Defendant shall conduct coliform

monitoring of the Newburgh Consolidated Water District as specified in 40 C.F.R. §§ 141.21 and

141.74.  On the tenth day of each month after the Effective Date, Defendant shall report to EPA,

NYSDOH, and OCDOH the results of such monitoring.  Such reporting shall be in accordance

with 40 C.F.R. §§ 141.31 and 141.75(a) and applicable New York law.

c.    Public Notification.  Defendant shall comply with all public notification

requirements of the Total Coliform Rule, the SWTR, and the Stage 1 DBPR, including 40 C.F.R.

§§ 141.21 and 141.201 - 210.

## VII.  SUPPLEMENTAL ENVIRONMENTAL PROJECTS

15.    Defendant shall implement and complete the following Supplemental

Environmental Projects ("SEPs"):  (a) the Chadwick Lake Reservoir Watershed Property

Purchases; (b) the Sanitary Sewer Main Extension at West Stone Street and North Carpenter

Avenue; and (c) the Orange Lake Storm Water Retrofit.  The SEPs are more specifically described in the scope of work (hereinafter the "Scope of Work"), attached hereto as Appendix B and incorporated into this Consent Decree by reference.  Defendant shall commence implementation of each of the SEPs by the respective commencement dates set forth in the Scope of Work.  Defendant shall complete each of the SEPs by the respective completion dates set forth in the Scope of Work.

16.    Defendant is responsible for the satisfactory completion of the SEPs in accordance with the requirements of this Consent Decree.  "Satisfactory completion" means that Defendant shall complete each SEP in accordance with the Scope of Work and all work plans and specifications.  Defendant may use contractors or consultants in planning and implementing the SEPs.

17.    With regard to the SEPs, Defendant certifies the truth and accuracy of each of the following:

a.    that all cost information provided to EPA in connection with EPA's approval of the SEPs is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEP is nine hundred and twelve thousand dollars ($912,000.00)

b.    that, as of the date of executing this Consent Decree, Defendant is not required to perform or develop any of the SEPs by any federal, state, or local law or regulation and is not required to perform or develop any of the SEPs by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.    that none of the SEPs is a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree;

- 14 -

     d.      that Defendant has not received and will not receive credit for any of the SEPs in any other enforcement action; and

     e.      that Defendant will not receive any reimbursement for any portion of any SEPs from any other person.

18.    <u>SEP Completion Report</u>.  Within 30 days after the date set for completion of each SEP, Defendant shall submit a SEP Completion Report for each SEP to the United States, in accordance with Section XVI of this Consent Decree (Notices).  The SEP Completion Report shall contain the following information as to each SEP:

     a.      a detailed description of the SEP as implemented;

     b.      a description of any problems encountered in completing the SEP and the solutions thereto;

     c.      an itemized list of all eligible costs for the SEP;

     d.      certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree; and

     e.      a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

19.    EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's completion report.

20.    After receiving a SEP Completion Report, the United States shall notify Defendant whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section X of this Consent Decree.

21.    Disputes concerning the satisfactory performance of a SEP and the amount of eligible SEP costs may be resolved under Section XII of this Consent Decree (Dispute Resolution).  No other disputes arising under this Section shall be subject to Dispute Resolution.

22.    Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 33.

23.    Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to any SEP under this Consent Decree shall include the following language:  "This project was undertaken in connection with the settlement of an enforcement action, United States v. The Town of Newburgh, (S.D.N.Y. 2007), taken on behalf of the U.S. Environmental Protection Agency under the Safe Drinking Water Act."

## VIII.  MEETINGS AND REVIEWS

24.    The Parties shall meet and confer, in person or by teleconference, on at least a quarterly basis following the submission of Defendant's quarterly reports and certifications pursuant to Section IX, unless the Parties agree, in writing, to less frequent progress meetings.

## IX.  REPORTING REQUIREMENTS

25.    All reports required to be submitted pursuant to this Consent Decree shall be submitted to the United States, NYSDOH, and OCDOH, as specified, at the addresses set forth in Section XVI (Notices).

26.    Within 30 days after the end of each calendar-year quarter (i.e., by January 30, April 30, July 30, and October 30) after lodging of this Consent Decree, until termination of this Consent Decree pursuant to Section XX, Defendant shall submit in writing to the United States, NYSDOH, and OCDOH a quarterly report and certification ("Quarterly Report") for the

preceding quarter detailing the status of all measures and other requirements set forth in Sections

VI and VII.

27.    With respect to the requirements of Section VI.A, the Quarterly Report shall

detail the status and progress of the Long Term Measures required pursuant to Paragraph 12,

including a description of:  (a) the work performed during the preceding three-month period; (b)

the work to be performed during the following three-month period pursuant to this Consent

Decree; (c) any noncompliance, or known or anticipated delay that may affect compliance with

any milestones set forth in Paragraph 12; the cause(s) of any such delay or noncompliance and

the duration of the delay; and (d) corrective action taken or to be taken to address such

noncompliance and/or to minimize the delay.  The report and certification also shall identify

each milestone date specified in Paragraph 12, scheduled to be completed in the quarter covered

by the report and certification.  For each such milestone, the report and certification shall state

whether or not Defendant has fully met that milestone and, if not, the work remaining to be done

to achieve full compliance with such milestone, and a schedule for completion of such work.  If a

schedule milestone is not met, the report and certification shall state what, if any, impact there

will be on compliance with the milestones in Paragraphs 12.x and 12.z, and Defendant shall

prepare and submit, within 15 business days, a plan to ensure that the schedule of milestones in

Paragraph 12 are complied with to the maximum extent practicable.

28.    With respect to the monitoring and inspection requirements of Section VI.B and

VI.C, the Quarterly Report shall identify all sampling locations and provide the results of the

analysis of the samples collected.

29.    With respect to each the SEPs Defendant is performing pursuant to Section VII,

the Quarterly Report shall include:  (a) a discussion of Defendant's progress in satisfying its

obligations in connection with the SEPs described in the Scope of Work under Section VII of this Consent Decree including, at a minimum, a narrative description of activities undertaken; (b) status of any construction or compliance measures, including the completion of any milestones set forth in the Scope of Work; and (c) a summary of costs incurred since the previous report.

30.    The Quarterly Report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of its likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If Defendant fails to comply with, violates, or has reason to believe that it may fail to comply with or violate, any requirement of this Consent Decree, Defendant shall notify the United States of such non-compliance or violation and its likely duration, in writing, within ten working days of the day Defendant first becomes aware of the non-compliance or violation, with an explanation of the likely cause of the non-compliance or violation and of the remedial steps taken, or to be taken, to prevent or minimize such non-compliance or violation.  If the cause of the non-compliance or violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the non-compliance or violation and shall then submit an amendment to the report, including a full explanation of its cause, within 30 days of the day Defendant becomes aware of its cause.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XI of this Consent Decree (Force Majeure).

31.    Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Consent Decree, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours

after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

32.    All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices).

33.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting Party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware  that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

34.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the SDWA, the NPDWR, the SWTR, the Stage 1 DBPR, the IESWTR, or by any other federal, state, or local law, regulation, permit, or other requirement.

35.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.  STIPULATED PENALTIES

36.    Defendant shall be liable for stipulated penalties to the United States for violation of this Consent Decree as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree,

including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

37.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section V of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per day for each day that the payment is late.

38.     Failure to Comply With Long Term Measures Milestones.  If Defendant fails to meet any requirement of the Long Term Measures Milestones set forth in Section VI.A within the specified time frames, Defendant shall pay a stipulated penalty as follows, for each day for each violation:

a.     For failure to meet the milestones set forth in Paragraphs 12.a through 12.w:

| Days of Non-Compliance or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 120th day | $100 |
| 121st to 180th day | $150 |
| 181st to 270th day | $250 |
| 271st to 365th day | $500 |
| After 365 days | $1,000 |

b.     For failure to meet the milestones set forth in Paragraphs 12.x and 12.z:

| Day of Non-Compliance or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 30th day | $10,000 |
| 31st to 60th day | $15,000 |
| 61st to 90th day | $20,000 |
| After 90 days | $27,500 |

c.    For failure to meet the milestones set for in Paragraphs 12.y, 12.aa, 12.bb and 12.cc:

| Day of Non-Compliance or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 30th day | $500 |
| 31st to 60th day | $1,500 |
| After 60 days | $3,000 |

39.    Failure to Comply With Interim Measures.  The following stipulated penalties shall accrue per violation per day for each violation of the monitoring requirements and additional interim conditions set forth in Paragraphs 13.a and 13.b:

| Days of Non-Compliance Or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 120th day | $100 |
| 121st to 180th day | $150 |
| 181st to 270th day | $250 |
| 271st to 365th day | $500 |
| After 365 days | $1,000 |

40.    Failure to Comply With Additional Measures.  The following stipulated penalties shall accrue per violation per day for each violation of the monitoring, reporting, or public notification requirements set forth in Paragraphs 14.a through 14.c:

| Days of Non-Compliance Or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 120th day | $100 |
| 121st to 180th day | $150 |
| 181st to 270th day | $250 |
| 271st to 365th day | $500 |
| After 365 days | $1,000 |

41.    Failure to Comply with Reporting Requirements.  The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Section IX of this Consent Decree:

| Days of Non-Compliance or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 120th day | $100 |
| 121st to 180th day | $150 |
| 181st to 270th day | $250 |
| 271st to 365th day | $500 |
| After 365 days | $1,000 |

42.    <u>Failure to Comply with SEP Requirements</u>.  If Defendant fails satisfactorily to complete any of the SEPs by the deadlines set forth in Appendix B to this Consent Decree, Defendant shall pay stipulated penalties for each day for which it fails satisfactorily to complete the SEP, as follows:

| Day of Non-Compliance or violation | Penalty per Violation Per Day |
|---|---|
| 1st to 30th day | $10,000 |
| 31st to 60th day | $15,000 |
| 61st to 90th day | $20,000 |
| After 90 days | $27,500 |

43.    The stipulated penalties provided for in this Section shall begin to accrue on the day after performance is due or on the day that a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.  Defendant shall pay any stipulated penalty within 30 days of receiving the United States' written demand.

44.    The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

45.    Stipulated penalties shall continue to accrue as provided in Paragraph 43 during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of the EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

c.      If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

46.     <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Sections VI that have occurred prior to the Effective Date of the Consent Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

47.     Defendant shall pay stipulated penalties owing to the United States in accordance with the procedures set forth in Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

48.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

49.     Subject to the provisions of Section XIV of this Consent Decree (Effect of Settlement and Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the SDWA, the NPDWR, or the SWTR, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI.  FORCE MAJEURE

50.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

51.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or

minimize the delay; a schedule for implementation of any measures to be taken to prevent or

mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a

force majeure event if it intends to assert such a claim; and a statement as to whether, in the

opinion of Defendant, such event may cause or contribute to an endangerment to public health,

welfare or the environment.  Defendant shall include with any notice all available documentation

supporting the claim that the delay was attributable to a force majeure.  Failure to comply with

the above requirements shall preclude Defendant from asserting any claim of force majeure for

that event for the period of time of such failure to comply, and for any additional delay caused by

such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any

entity controlled by Defendant, or Defendant's contractors knew or should have known.

52.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure

event, the time for performance of the obligations under this Consent Decree that are affected by

the force majeure event will be extended by EPA for such time as is necessary to complete those

obligations.  An extension of the time for performance of the obligations affected by the force

majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA

will notify Defendant in writing of the length of the extension, if any, for performance of the

obligations affected by the force majeure event.

53.     If EPA does not agree that the delay or anticipated delay has been or will be

caused by a force majeure event, EPA will notify Defendant in writing of its decision.

54.     If Defendant elects to invoke the dispute resolution procedures set forth in Section

XII (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.  In

any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of

the evidence that the delay or anticipated delay has been or will be caused by a force majeure

event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 50 and 51, above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.  DISPUTE RESOLUTION

55.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

56.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

57.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position

shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

58.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

59.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

60.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

61.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 57 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any

other items requiring approval by EPA under this Consent Decree, the adequacy of the

performance of work undertaken pursuant to this Consent Decree, and all other disputes that are

accorded review on the administrative record under applicable principles of administrative law,

Defendant shall have the burden of demonstrating, based on the administrative record, that the

position of the United States is arbitrary and capricious or otherwise not in accordance with law.

        b.       <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in

any other dispute brought under Paragraph 57, Defendant shall bear the burden of demonstrating

that its position complies with and furthers the Objectives of this Consent Decree, the SDWA,

the NPDWR, the SWTR, the Stage 1 DBPR, the IESWTR, and other applicable federal and state

laws governing public water systems.

       62.     The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 45.  If

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid

as provided in Section X (Stipulated Penalties).

XIII.  <u>INFORMATION COLLECTION AND RETENTION</u>

       63.     The United States and its representatives, including attorneys, contractors, and

consultants, shall have the right of entry into any property or facility owned by Defendant

relating to the Newburgh Consolidated Water District at all reasonable times, upon presentation

of credentials, to:

        a.       monitor the progress of activities required under this Consent Decree;

b.       verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.       obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.       obtain documentary evidence, including photographs and similar data; and

e.       assess Defendant's compliance with this Consent Decree.

64.       Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

65.       Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

66.       At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents,

records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following information: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

67.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

68.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XIV.    EFFECT OF SETTLEMENT AND RESERVATIONS OF RIGHTS

69.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

70.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein. This Consent Decree

shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the SDWA, the NPDWR, the SWTR, the Stage 1 DBPR, the IESWTR, or under other federal or state laws, regulations, or permit conditions, except as expressly stated herein. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Newburgh Consolidated Water District or the WTP, whether related to the violations addressed in this Consent Decree or otherwise.

71.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the WTC or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 69.

72.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the SDWA, the NPDWR, the SWTR, the Stage 1 DBPR, the IESWTR, or with any other provisions of federal, State, or local laws, regulations, or permits.

- 31 -

73.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

74.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.  COSTS

75.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVI.  NOTICES

76.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States

Pierre G. Armand
Assistant United States Attorney
United States Attorney's Office
Sothern District of New York
86 Chambers Street
New York, New York  10007

Chief, Environmental Enforcement Section
Ref. #  2006V01331
U.S. Department of Justice – EES
P.O. Box 7611, Ben Franklin Sta.
Washington, D.C.  20044

if by overnight mail:

Chief, Environmental Enforcement Section
Ref. #  2006V01331
U.S. Department of Justice – EES
1425 New York Ave., N.W., Rm. 13071
Washington, D.C.  20005

Kim Kramer
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th floor
New York, New York 10007-1866

U.S. Environmental Protection Agency
Region II
Water Compliance Branch
Attn: Nicole Foley Kraft
Public Water Supply Enforcement Team
290 Broadway, 20th Floor
New York, New York  10007

<u>To Defendant</u>

Kimberlea Shaw Rea, Esq.
Bosworth Gray & Fuller
116 Kraft Avenue
Bronxville, NY 10708
Attorney for Defendant

Mark C. Taylor, Esq.
Rider, Weiner & Frankel, P.C.
655 Little Britain Road
New Windsor, New York 12550
Attorney for Defendant

Wayne Booth
Town Supervisor
Town of Newburgh
1496 Route 300
Newburgh, New York  12550

To NYSDOH

Victor E. Pisani, Director
Bureau of Public Water Supply
New York State Department of Health
Flanigan Square
547 River Street
Troy, New York  12180-2216

To OCDOH

Edwin L. Sims, P.E., Director
Bureau of Sanitary Engineering
Orange County Department of Health
124 Main Street
Goshen, New York 10924-2199

77.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

78.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

79.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date, including the Interim Measures described at Section VI.B and the Additional Measures described at Section VI.C.  In the event that the United States withdraws or withholds its consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

XVIII.  RETENTION OF JURISDICTION

80.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Consent Decree or entering

orders modifying this Decree, pursuant to Sections XII and XIX, or effectuating or enforcing

compliance with the terms of this Decree.

XIX. MODIFICATION

81.    The terms of this Consent Decree, including any attached appendices, may be

modified only by a subsequent written agreement signed by both Parties.  Where the

modification constitutes a material change to this Consent Decree, it shall be effective only upon

approval by the Court.  Any disputes concerning modification of this Decree shall be resolved

pursuant to Section XII of this Consent Decree (Dispute Resolution), provided, however, that,

instead of the burden of proof provided by Paragraph 61, Defendant bears the burden of

demonstrating that it is entitled to the requested modification in accordance with Federal Rule of

Civil Procedure 60(b).

XX.  TERMINATION

82.    After Defendant has completed all of the requirements set forth in Sections VI

and VII, has paid the civil penalty and any accrued stipulated penalties as required by this

Consent Decree, and has operated the WTP and maintained continuous satisfactory compliance

with all requirements of this Consent Decree, including those relating to the SEPs set forth in

Appendix B, as well as all applicable provisions of the SDWA, the NPDWR, the SWTR, the

Stage 1 DBPR, and the IESWTR for a period of twelve (12) consecutive months, Defendant may

serve upon the United States a Request for Termination, stating that Defendant has satisfied

those requirements, together with all necessary supporting documentation.

83.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

84.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XII of this Consent Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Section XII, until 60 days after service of its Request for Termination.

## XXI.  PUBLIC PARTICIPATION

85.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXII.  SIGNATORIES AND SERVICE

86.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environmental and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

87.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII.  INTEGRATION

88.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV.  FINAL JUDGMENT

89.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXV.  APPENDICES

90.     The following Appendices are attached to and incorporated into this Consent Decree:  (i) Appendix A is the August 12, 1998, letter from Michael E. Burke of NYSDOH to James Osbourne, Town of Newburgh Engineer; and (ii) Appendix B is the Supplemental Environmental Projects Scope of Work.

The Court finds that this Consent Decree is a reasonable and fair settlement and adequately protects the public interest in accordance with the Safe Drinking Water Act. Entered as a Final Judgment and Order of this Court this _____ day of _____, 2008.

 

_____
UNITED STATES DISTRICT JUDGE

 

The Parties, by their undersigned representatives, enter into this Consent Decree in United States v. Town of Newburgh.

Dated: _June____30__, 2008

THE UNITED STATES OF AMERICA:

By: _____
RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

By: _____
PIERRE G. ARMAND
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Tel. No.:  (212) 637-2724
Fax No.:  (212) 637-2730

The Parties, by their undersigned representatives, enter into this Consent Decree in

United States v. Town of Newburgh.

Dated: April 29, 2008

By: _____
ALAN J. STEINBERG
Regional Administrator
Region II
U.S. Environmental Protection
    Agency
290 Broadway
New York, New York 10007-1866

The Parties, by their undersigned representatives, enter into this Consent Decree in

United States v. Town of Newburgh.


Dated: _____ ___, 2008


                                    THE TOWN OF NEWBURGH

                            By:     _____
                                    WAYNE BOOTH
                                    Town Supervisor
                                    Town of Newburgh
                                    1496 Route 300
                                    Newburgh, New York  12550


                            By:     _____
                                    KIMBERLEA SHAW REA
                                    Bosworth Gray & Fuller
                                    116 Kraft Avenue
                                    Bronxville, New York  10708
                                    Attorney for Defendant

# APPENDIX A



**STATE OF NEW YORK**
**DEPARTMENT OF HEALTH**

II University Place          Albany, New York 12203-3399

Barbara A. DeBuono, M.D., M.P.H.                                        Dennis P. Whalen
*Commissioner*                                                    *Executive Deputy Commissioner*

August 12, 1998

James Osborne P. E.
Town of Newburgh Engineer
20-26 Union Ave. Extension
Newburgh,  NY  12550

Dear Mr. Osborne:

This letter summaries the discussions and agreement reached between the Newburgh
Consolidated Water District, Orange County Department of Health and the New York State
Department of Health regarding the use of the Delaware Aqueduct.  The Newburgh Consolidated
Water District may use water purchased from New York City's Delaware Aqueduct without
providing filtration provided the water meets all conditions for Filtration Avoidance as well as
the special conditions listed below.  If Avoidance conditions are not met, Newburgh must
provide filtered water from its Chadwick Lake source to meet the needs of its consumers and
contract obligations.  Modifications to the Chadwick Lake Filter Plant which will enable the
District to meet this condition must be completed by October 1, 1998 and the filter plant must be
maintained in a ready state to meet the demands of the District and its outside commitments
anytime the Delaware source does not meet the above criteria.

1.  Raw water fecal coliform concentrations, measured at the tap, must be equal to or less than 20
colonies per 100 milliliters or total coliform concentrations must be equal to or less than 100
colonies per 100 milliliters in at least 90 percent of the measurements made in the previous six
months that the system is in operation.  If both fecal and total coliform analysis are performed,
fecal coliform results will take precedence.  A minimum of four samples per week shall be
collected.  Monitoring samples must be collected on separate days.  Samples must also be
collected and analyzed every day the raw water exceeds 1.49 nephelometric turbidity units
(NTU).

> Compliance with this provision requires that each week, the number of total coliform
> samples above 100 per 100 milliliters or the number of E coli samples above 20 per 100
> milliliters from current week and the previous 25 weeks must be totaled and compared to
> the total number of samples collected during the 26 week period.  If the number of
> samples exceeding the criteria approaches 90 percent, the Delaware Aqueduct Tap must
> be closed and not opened again until the sample results will not cause the 90 percent
> criteria to be exceeded.  Sampling must continue during the period the tap is closed.

2.  Raw water turbidity levels, measured at the tap, must not exceed five NTU.  Raw water
turbidity shall be monitored every four hours.  If continuous monitoring is used, turbidity levels
at four hour intervals shall be reported. If the two consecutive day average exceeds 1.49 NTU, a

sample shall be collected and analyzed for coliform bacteria at a point downstream of the first consumer, but as close to the first consumer as is feasible. The sample should be taken within one hour after determining the two consecutive day turbidity average. The results shall be reported to the Health Department within 48 hours of obtaining the result.

> Compliance with this provision requires that Delaware Aqueduct Tap be closed as soon as the four hour turbidity readings reach 5 NTU. The Tap may be reopened when the turbidity readings fall below 5 NTU. Monitoring shall continue when the Tap is closed.

3. Disinfection must be sufficient to ensure at least 99.9 percent inactivation of giardia lamblia cysts and 99.99 percent inactivation of viruses, between a point where the raw water is no longer subject to contamination by surface water runoff and a point downstream before or at the first consumer. CT values must be equal or exceed the required values in Section 5-1.52 tables 14A through 14G of the State Sanitary Code. CT values must be calculated each day that water is taken from the Delaware Tap. The following parameters must be measured:

> a) temperature of the disinfected water measured at least once per day at the residual disinfectant concentration sampling point;

> b) pH of the disinfected water, measured at least once per day at the chlorine residual disinfectant concentration sampling point;

> c) disinfectant contact time (T), determined daily during peak hourly flow; and

> d) residual disinfectant concentration (C), before or at the first customer, measured daily during peak hourly flow.

4. The disinfection system must have redundant components to ensure continuous disinfection.

5. A chlorine residual of not less than 0.2 milligrams per liter must be maintained in the water entering the distribution system.

6. A free chlorine residual must be maintained at representative points in the distribution system.

7. The water system shall demonstrate that the water withdrawn from the Delaware Aqueduct has a travel time of greater than 60 days within the Delaware watershed control area that meets the requirements of Section 5-1.30 (7) of the State Sanitary Code. Calculation of travel time shall be based on the effective storage volume of Roundout Reservoir divided by the total reservoir outflow plus the weighted average travel time of the effective storage volume of the Neversink, Pepacton and Cannonsville reservoirs divided by their respective total outflows. The calculation will be conducted on a weekly basis. The information is available by e mail from the New York City Department of Environmental Protection. Please contact Mr. Robert Mayer of the NYCDEP to release this information. His e mail address is

(bobmayer@pppmail.appliedtheory.com)

If the calculations according to the above indicate that the travel time is less than 60 days then the tap must be closed until calculations show the 60 day travel time is met.

8.  All monitoring results and calculations must be submitted to the Orange County Department of Health by the 10th day of the following month.  The Orange County Department of Health must be notified whenever the Delaware Aqueduct Tap is closed.  Before opening the Tap after being closed,   calculations or sample results which show avoidance conditions are met must be presented to the Orange County Department of Health for verification.

Sincerely,

Michael E. Burke, P.E.,  Director
Bureau of Public Water Supply Protection

cc      Mr. Wakeman/Burhans
        Mr. Mundy - OCHD
        Mr. Hotaling
        Mr. Stasko
        Mr. McKenna, EPA

P:Newburgh.wpd

3

# DOH STATE OF NEW YORK
## DEPARTMENT OF HEALTH

Flanigan Square, 547 River Street, Troy, New York 12180

May 5, 2000

Antonia C. Novello, M.D., M.P.H.
*Commissioner*

Dennis P. Whalen
*Executive Deputy Commissioner*

James Osborne P.E.
Town of Newburgh Engineer
20-26 Union Avenue Extension
Newburgh,   NY   12550

Dear Mr. Osborne:

Item 7 of the agreement between the Newburgh Consolidated Water District, Orange County Health Department and the New York State Health Department regarding use of the Delaware Aqueduct; requires that the water withdrawn must have a travel time greater than 60 days with in the controlled area of the watershed that meets Section 5-1.30 (7) of the State Sanitary Code.  Recent discussions with New York City indicated that the entire Neversink, Pepacton and Connonsville reservoirs are now included in the protected area.  This determination requires a change in the factors used in the calculation of the 60 day travel time.

As stated in the August 12, 1998 letter, calculation of travel time is based on the effective storage volume of Roundout Reservoir divided by the total reservoir outflow plus the weighed average travel time of the effective storage volume of the Neversink, Pepacton and Cannonsville reservoirs divided by their respective total outflows.  However, the 60 day factor of 0.19 for the Neversink reservoir, 0.11 for the Pepacton reservoir and 0.97 for the Cannonsville reservoir now become 1.0 and can be dropped from the calculation.  However, the location of the reservoir intake with respect to the dam has an impact on the effective storage volume and must be included in the travel time calculation.  The factors are: Cannonsville 0.25, Pepacton 0.90, Neversink 0.95 and Roundout 1.00.  During the months of June, July, August and September a factor of 0.7 must be included to account for reservoir stratification.

The following is a sample calculation for August 8, 1999.

### RESERVOIR STATUS – AUGUST 8, 1999

|               | Roundout (mg.) | Neversink (mg.) | Pepacton (mg.) | Cannonsville (mg.) |
|---------------|---------------:|----------------:|---------------:|-------------------:|
| Gross Storage | 46,843         | 17,463          | 115,335        | 55,716             |
| Draft         | 778            | 0               | 445            | 201                |
| Spills        | 0              | 0               | 0              | 0                  |
| Total Releases| 14             | 34              | 61             | 893                |

Travel time in Roundout Reservoir = (gross storage Roundout) (reservoir factor) (stratification factor if applicable) / (draft) + (releases) + (spills)

Time in days = (46,843 mg.)(1.0)(0.7) / (778 mg.) + (14.0 mg.) + (0.0) = 41.4 days

Travel time in Neversink Reservoir = (gross storage Neversink) (reservoir factor) (stratification factor) / (draft) + (releases) + (spills)

Time in days = (17,463 mg.)(0.95)(0.7) / (0) + (34 mg.) + (0) = 341.6 days

Travel time in Pepacton Reservoir = (gross storage Pepacton) (reservoir factor) (stratification factor) / (draft) + (releases) + (spills)

Time in days = (115,335 mg.)(0.90)(0.7) / (445 mg.) + (61 mg.) + (0) = 143.6 days

Travel time in Cannonsville Reservoir = (gross storage Cannonsville) (reservoir factor) (stratification factor) / (draft) + (releases) + (spills)

Time in days = (55,716 mg.)(0.25)(0.7) / (201 mg.) + (893 mg.) + (0) = 8.91 days

Weighted average travel time of Neversink, Pecpacton and Cannonsville Reservoirs = [(travel time Neversink) (draft Neversink) / (draft Neversink + draft Pepacton + draft Cannonsville)] + [(travel time Pepacton) (draft Pepacton) / (draft Neversink + draft Pepacton + draft Cannonsville)] + [(travel time Cannonsville) (draft Cannonsville) / (draft Neversink + draft Pepacton + draft Cannonsville)]

Weighted average travel time = [(341.6 days) (0) / (0) + (445 mg.) + (201 mg.)] + [(143.6 days) (445 mg.) / (0) + (445 mg.) + (201 mg.)] + [(8.9 days) (201 mg.) / (0) + (445 mg.) + (201 mg.)]

Weighted average travel time = [0 days] + [98.9 days] + [2.8 days] = 101.7 days

Total travel time = (travel time Roundout Reservoir) + (weighed average travel time)

Total travel time =  (41.4 days) + (101.7 days)  = 143.1 days

Using previous effective storage volumes would have resulted in the following travel times:

Roundout = 41.4 days

Neversink = (341.6)(0.19) = 64.9 days

Pepacton = (143.6)(0.11) = 15.8 days

Cannonsville = (8.91)(0.97) = 8.6 days

Weighted average = $[(64.9)(0)/646] + [(15.8)(445)/646] + [(8.6)(201)/646]$

$$= (0) + (10.9) + (2.7)$$

$$= 13.6 \text{ days}$$

Total Travel Time = $41.4 + 13.6 = 55$ days

The change in effective storage volume has significantly changed the calculation of travel time and will potentially result in fewer incidents of Delaware Aqueduct shutdown due to not meeting the 60 day travel time criteria.

Sincerely,

Michael E. Burke P.E  Director
Bureau of Public Water Supply Protection

Cc    Mr. Wakeman/Burhans
      Mr. Mundy – OCHD
      Mr. Dumas – UCHD
      Mr. Hotaling
      Mr. Stasko
      Mr. McKenna – EPA Region 2
      Mr. Kiselica, - EPA, Region 2

C:\windows\TEMP\~0056764.doc

# APPENDIX B

**APPENDIX B**

**SUPPLEMENTAL ENVIRONMENTAL PROJECTS
SCOPE OF WORK**

**1.      Chadwick Lake Reservoir Watershed Protection Property Purchases**

     Project Description: The Town of Newburgh (the "Town") shall acquire fee title to vacant undeveloped real properties in the Chadwick Lake Reservoir Watershed for purposes of providing protection to the water quality of the Chadwick Lake Reservoir.  Upon acquiring fee title to the properties, the Town shall hold them in perpetuity in an undeveloped state.  The Town shall use its best efforts to acquire fee title to: (a) an approximately 10-acre parcel of real property immediately adjacent to the Plattekill Creek, noted as "Parcel 1" on the map annexed hereto; and (b) approximately 12 to14 acres of a 25-acre parcel of real property immediately adjacent to the Plattekill Creek, noted as "Parcel 2"on the map annexed hereto.  If the Town, despite its best efforts, is unable to acquire fee title to Parcel 1 and/or Parcel 2, the Town shall use all funds originally allocated to the prospective purchase of Parcel 1 and/or 2 to acquire fee title to substitute properties.  Any such substitute property shall be located within the primary protection area of the Chadwick Lake Reservoir Watershed and shall provide protection to the Watershed that is equal to or better than that which Parcels 1 and/or 2 would have afforded.  The Town shall acquire any such substitute property within 18 months of the date that the Town learns that it cannot purchase Parcels 1 and/or 2.

     Amount to Be Spent: $440,000

     Commencement Date: Entry of Consent Decree

     Final Completion Date: 24 months from entry of Consent Decree

**2.      Connection of North Carpenter Avenue and West Stone Street to the City of
      Newburgh Wastewater Treatment Plant**

     Project Description:  The Town has the right pursuant to an Inter-Municipal Agreement with the City of Newburgh (the "City") to connect any area of the Town to the City's sanitary sewer system, which is treated by the City's wastewater treatment facility.  North Carpenter Avenue and West Stone Street are two streets located in the Town that presently are not connected to the City's sanitary sewer system.  There are approximately 30 lots on North Carpenter Avenue and West Stone Street, containing single family residential units, a six-unit apartment building and commercial properties.  This area of the Town has a history of failing septic systems.  The Town shall install approximately 1,700 linear feet of sanitary sewers along North Carpenter Avenue and West Stone Street to permit residential and commercial properties in those areas to connect directly to the City's sanitary sewer system.  The Town shall also

install lateral sewer connection lines providing access to the sewer main from the property lines of all lots with frontage along North Carpenter Avenue and/or West Stone Street.

Amount to Be Spent: $450,000

Schedule:

- Town shall award a design contract for construction this Project within 12 months after entry of the Consent Decree

- Town shall commence construction of this Project within 24 months after entry of the Consent Decree

- Town shall complete this Project within 42 months after entry of the Consent Decree

**3.    Orange Lake Storm Water Retrofit**

Project Description: The Town shall replace all existing catch basins connected to pipes that discharge into Orange Lake in Orange County, New York, with new catch basins equipped to trap sediment in sumps and prevent floatable debris from being discharged into Orange Lake.

Amount to Be Spent: $22,000

Commencement Date: Entry of Consent Decree

Final Completion Date: 15 months from entry of Consent Decree